NOT DESIGNATED FOR PUBLICATION

No. 120,015

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TERESA WILKE,
*Appellant*,

v.

RONALD ASH,
*Appellee*.


MEMORANDUM OPINION


Appeal from Douglas District Court; AMY J. HANLEY, judge. Opinion filed August 2, 2019.
Reversed and remanded.


*Keynen J. Wall*, of Forbes Law Group, LLC, of Overland Park, and *William J. Skepnek*, of
Skepnek Law Firm, PA, of Lawrence, for appellant.


*Ian M. Bartalos* and *Anthony M. Knipp*, of McCausland Barrett & Bartalos P.C., of Kansas City,
Missouri, for appellee.


Before SCHROEDER, P.J., BUSER and ATCHESON, JJ.


PER CURIAM:  Teresa Wilke appeals the district court's decision to grant summary
judgment to Ronald Ash because Wilke could not show Ash's dog Zane was vicious.
Wilke claims the issue is dangerousness of the dog, not viciousness. Wilke's argument is
persuasive. The material question of whether Zane was dangerous and whether his
dangerousness was reasonably foreseeable to Ash still remains. We reverse and remand.


1

Wilke suffered an open compound fracture to her lower leg and ankle when Ash's dog Zane struck Wilke from behind at the "Mutt Run Off-Leash Dog Park." Zane is a Bouvier de Flandres and was about one year old. Zane weighed approximately 100 pounds when he hit Wilke. Wilke sued Ash for negligence, claiming Ash had a duty to know Zane's general propensities and guard against them if they were likely to cause injury. Wilke also alleged the Bouvier de Flandres breed was bred to herd large animals and Ash knew of Zane's power, but he did not train Zane to stop or come to him on command. According to Wilke, Ash breached his duty of care because it was a foreseeable risk Zane could cause serious injury. Wilke also claimed Ash breached an implied contract because the dog park displayed rules Ash had to follow, but he failed to do so.

Ash denied Wilke's claims and the parties engaged in discovery. Wilke's dog training expert testified in depositions the Bouvier de Flandres was bred to drive its shoulder into large animals to herd them. The dog expert also testified if an owner of a Bouvier de Flandres properly trained the dog, the owner could prevent the type of injury Wilke received.

Ash also testified in depositions. Ash had previously watched videos of the Bouvier de Flandres herding cattle by nudging or bumping the body of the cow. Ash believed a Bouvier de Flandres had to be trained to herd animals. Ash did not take Zane to obedience training or train Zane to herd, but Ash did train Zane to sit, stay, and retrieve. Ash admitted Zane was not trained to come on command and he sometimes struggled with chasing dogs or cats.

Ash later moved for summary judgment, arguing Wilke's contract claim lacked merit. Ash also argued Wilke failed to present evidence Zane was vicious or dangerous and that Ash knew Zane had these characteristics.

The district court granted Ash summary judgment against Wilke's contract claim but denied summary judgment on Wilke's negligence claim, finding there were material issues of fact relating to foreseeability. The district court explained the issues were more fully developed in the transcript from oral arguments, but neither party included the transcript in the record on appeal. The issue of foreseeability was set for trial.

During a telephone conference prior to trial to discuss proposed jury instructions, Wilke asked the court to use a negligence instruction based on *Bertram v. Burton*, 129 Kan. 31, 34, 281 P. 892 (1929). Wilke asked the district court to instruct the jury as follows:

> "'The owner of a domestic animal is bound to take notice of the general propensities and characteristics of the class to which it belongs and must anticipate and guard against them if of a nature to cause injury, for he [or she] necessarily knows that some act causing injury will be committed if opportunity therefor is afforded.'"

Ash asked the district court to instruct the jury on vicious animals, specifically: "(1) [T]hat [Zane] had vicious propensities; and (2) that [Ash] had knowledge of these vicious characteristics."

Based on the proposed jury instructions and further argument from the parties, the district court found Ash had clarified his statement of the law. Instead of arguing for "vicious or dangerous" propensities, Ash now focused on the word "vicious." According to the district court, Ash's clarification prompted reexamination of the prior summary judgment motion. The district court found Ash's proposed jury instruction was the accurate statement of current Kansas law. The district court also found viciousness was a required element of Wilke's negligence claims, but Wilke had no evidence Zane had "vicious" propensities. Wilke conceded to this lack of evidence on viciousness but continued to argue the fact question was whether the dog had dangerous propensities. The district court granted Ash summary judgment.

3

We acknowledge both parties filed letters of additional authority under Supreme Court Rule 6.09 (2019 Kan. S. Ct. R. 39).

ANALYSIS

*Wilke did not invite error*

Ash argues Wilke's claims should be denied based on the doctrine of invited error. Whether invited error applies is a question of law subject to unlimited appellate review. *State v. Hankins*, 304 Kan. 226, 230, 372 P.3d 1124 (2016). Generally, when a party has invited error, the error cannot be complained of on appeal. *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1203-04, 308 P.3d 1238 (2013).

Ash presents two reasons why Wilke's appeal should be denied based on invited error. First, Ash alleges Wilke requested a telephone conference with the district court to reexamine the district court's prior summary judgment decision. The appellate record does not support this claim. The district court's order granting summary judgment is the only appellate record addressing why the court revisited Ash's original motion for summary judgment. After the parties discussed the proposed jury instructions, Ash clarified his argument, prompting the district court to reexamine summary judgment. Wilke did not invite the district court's decision.

Next, Ash argues Wilke caused the district court to grant summary judgment because she conceded she had no evidence Ash's dog was "vicious." While true, this is irrelevant to Wilke's complained of error because she argues the district court erred as a matter of law, not on a fact issue. According to Wilke, the district court erred because viciousness is not an element of her claim of negligence. Wilke's claim was based on the dangerous propensities of the dog and the owner's knowledge of the dog's propensities. Wilke maintained this position during the conference call, but the district court disagreed with Wilke's view of the law. Wilke did not invite the court to grant summary judgment

4

against her because she claimed the district court was applying the incorrect law, not misapplying facts. Wilke did not invite any error. See *Thoroughbred Assocs.*, 297 Kan. at 1203.

*Standard of review based on negative factual findings does not apply*

Ash also contends this court should apply a standard of review based on a negative factual finding. Finding a party did not meet its burden of proof is a negative factual finding. In reviewing a negative factual finding, the appellate court must consider whether the district court arbitrarily disregarded undisputed evidence or relied on some extrinsic consideration such as bias, passion, or prejudice to reach its decision. *MFA Enterprises, Inc. v. Delange*, 50 Kan. App. 2d 1049, 1056, 336 P.3d 891 (2014).

Ash argues the summary judgment ruling is a negative factual finding because Wilke conceded she had no evidence Zane was vicious. While Ash is correct, Wilke does not dispute the court's factual findings. Wilke argues the district court erred in determining the applicable law. The district court made no negative finding. The real question involves the dangerous propensities of the dog and the foreseeability of his dangerous propensities, not whether the dog was vicious.

*Summary judgment was improperly granted*

Wilke alleges the district court abused its discretion when it granted summary judgment against her.

> ""Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come

forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'" [Citation omitted.]" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

According to Wilke, the district court erred as a matter of law because she does not need to establish Ash's dog Zane was vicious. Instead, Wilke claims her only burden was to establish whether Zane was dangerous. . Wilke is correct, the issue is not Zane's viciousness, but whether Zane's characteristics or propensities make him dangerous under the particular circumstances of this case. Viciousness is not a necessary legal condition to find Ash liable for injuries caused by his dog.

Kansas law allows a plaintiff injured by a domestic animal to recover against the animal owner under a theory of negligence. When an animal has a characteristic or propensity that makes it dangerous, an owner may be held liable for failing to exercise reasonable care to prevent the injury. See *Berry v. Kegans*, 196 Kan. 388, 390-91, 411 P.2d 707 (1966) (dog); *McKinney v. Cochran*, 197 Kan. 524, Syl. ¶ 3, 419 P.2d 931 (1966) (syllabus point general statement; case involved horse); *Henkel v. Jordan*, 7 Kan. App. 2d 561, 562-63, 644 P.2d 1348 (1982).

The Kansas Supreme Court applied domestic animal law to a plaintiff's dog bite injuries in *Berry*. 196 Kan. at 391. There, a six-year-old girl and her friends threw mud at a dog in its yard. Claudia Kegans, the dog owner, told the children to stop teasing the dog. The children left and Claudia went inside her house. The children later returned to the yard, and Claudia saw the six-year-old running and screaming. The Kegans' dog bit the six-year-old's hand. The dog had no history of harming anyone. The child's father sued the Kegans, claiming they were negligent because they failed to muzzle their dog or

6

keep the dog inside while the children played. He also alleged the Kegans harbored an animal "known to be vicious and dangerous." 196 Kan. at 390.

At trial, the district court instructed the jury to return a verdict in favor of Berry if the jury found the Kegans knew or had reason to know their dog was likely to bite, claw, or injure someone. It also instructed the jury to return a verdict in favor of the Kegans if the jury found they did not know or had no reason to know their dog was likely to bite, claw, or injure someone. The district court included this additional instruction about dogs:

> "'You are further instructed that dogs, even hunting dogs, have from time immemorial been regarded as friends and companions of man. The great majority of dogs are harmless, and the possession of characteristics dangerous to mankind is properly regarded as abnormal to them. The owner of a dog is not liable for its biting, clawing, or injuring of a person unless the owner has reason to know that it is likely to do so and this knowledge was prior to the incident.'" 196 Kan. at 390-91.

Berry did not object to the jury instructions. The jury returned a verdict for the Kegans and Berry appealed. Our Supreme Court affirmed the jury's decision because the jury instructions correctly stated the law and Berry failed to object to the jury instructions. 196 Kan. at 391.

In doing so, the *Berry* court noted the general rule for domestic animal liability "'in the absence of statute, is that the owner of the animal is not answerable for injuries done by it when in a place where it had a right to be, unless it was, in fact and to the owner's knowledge, vicious or dangerous.'" 196 Kan. at 391 (quoting 4 Am. Jur. 2d, Animals § 86).

7

In *Henkel*, another panel of this court applied the general rule of domestic animal liability to a "dog fright" case. 7 Kan. App. 2d at 563-65. When a dog injures someone without physical contact, the owner may be liable for those injuries when he or she could foresee his or her dog would injure someone. 7 Kan. App. 2d at 565. The Jordans' dog Peanut was part cocker spaniel, part poodle, and almost 20 pounds. The Jordans allowed Peanut to run loose and he gained a reputation as the neighborhood menace. Peanut regularly barked and frightened neighbors and others. On one occasion a neighbor had to beat Peanut off of him with a broken branch. On another, a young lady rescued a tearful little girl who was cornered by Peanut.

Henkel rode his bike near the Jordans' home and Peanut came running out while barking. Henkel then crashed his bike, suffered severe injuries, and sued the Jordans for negligence. A jury found the Jordans at fault, but they appealed. The *Henkel* court found the general principle of foreseeability was the key element in this dog "fright" case. 7 Kan. App. 2d at 563. Given the dog's behavior and the Jordans' knowledge of it, the *Henkel* court found it appropriate for the jury to decide whether the Jordans should have foreseen the dog could harm another. 7 Kan. App. 2d at 565. In upholding the parties' jury instructions, the *Henkel* court noted that "[t]he jury was first to determine whether defendants knew Peanut on-the-loose was dangerous, and whether the harm resulting was of the type they should have foreseen if he was loose." 7 Kan. App. 2d at 567.

Here, the district court erred when it found viciousness was a necessary element of Wilke's claims against Ash. Wilke has never alleged Ash's dog Zane was vicious. Instead, she claims Zane was dangerous. As a matter of Kansas tort law, an injured plaintiff may go forward with a claim that a dog has a dangerous characteristic or propensity of which its owner had knowledge or reason to know. *Berry*, 196 Kan. at 391, *Henkel*, 7 Kan. App. at 565-67. Depending on their size, strength, and exuberance, some dogs may be dangerous without being vicious. We reverse the district court and remand for further proceedings.

8

Reversed and remanded.